**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE: WAL-MART ATM FEE NOTICE LITIGATION<br><br><br>MDL No. 2234 | MDL Docket No. 2:11-md-02234-JPM-dkv<br><br>Cases:<br>  1:10-cv-01223 (Weir)<br>  2:10-cv-02620 (Donaville)<br>  2:11-cv-02512 (Fondren)<br>  2:11-cv-02530 (Black)<br>  2:11-cv-02536 (Fambrough) |

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION (ECF NO. 99) AND ORDER GRANTING MOTION FOR CLASS CERTIFICATION (ECF NO. 101)**

Before the Court are Plaintiffs' Motion for Class Certification (ECF No. 99) regarding the claims against Defendant Wal-Mart, Inc. ("Wal-Mart") and Plaintiffs' Motion for Class Certification (ECF No. 101) regarding the claims against Defendant Satellite Receivers, Ltd. d/b/a Cash Depot ("Cash Depot"), both filed February 21, 2013. On July 17, 2015, Defendants Wal-Mart and Cash Depot filed separate supplemental responses to these motions, consolidating their earlier filings. (ECF Nos. 178, 179.) Plaintiffs filed a reply brief on July 31, 2015 (ECF No. 181), and with leave of Court, Defendants filed a sur-reply on August 19, 2015 (ECF No. 185). On August 25, 2015, the Court held a hearing on the motions for class certification. (Min. Entry, ECF No. 186.) For the reasons stated below, the instant Motions are GRANTED.

## I. BACKGROUND

On October 11, 2011, Plaintiffs filed a Consolidated Complaint against Defendants Wal-Mart, Cash Depot, and Diebold Inc. ("Diebold"), alleging violations of 15 U.S.C. § 1693b(d)(3)(C) and its implementing regulation, 12 C.F.R. § 205.16(e), stemming from Defendants' failure to post notice of an ATM fee on or at Defendants' ATMs. (ECF No. 39 ¶¶ 117-123.) Defendants filed respective Answers to the Consolidated Complaint on November 1, 2011. (ECF Nos. 40, 41, 42.)

On December 20, 2011, Defendants filed separate Motions for Summary Judgment, each alleging that it was not the automated teller machine operator at any of the ATMs at issue. On March 23, 2012, Plaintiffs filed a First Amended Consolidated Complaint, which addressed the arguments raised in Defendants' Motions for Summary Judgment and abandoned claims against Defendant Diebold. (ECF No. 53). Defendants subsequently withdrew their respective Motions for Summary Judgment. (ECF No. 56, 57, 58.) On December 10, 2012, Defendants Wal-Mart and Cash Depot filed respective Answers to the First Amended Consolidated Complaint. (ECF Nos. 91, 92.)

On February 21, 2013, Plaintiffs filed the instant Motions for Class Certification. (ECF Nos. 99, 101.) Plaintiffs assert that their putative classes meet all the requirements of Federal Rule of Civil Procedure 23(a) and argue that the class should be

certified under Rule 23(b)(3). (ECF No. 99-1 at 17; ECF 101-2 at 17.)

Plaintiffs propose the following class definitions as to the claims against Defendant Wal-Mart:

> All persons who initiated an electronic funds transfer at the Wal-Mart ATM located at 5255 Elvis Presley Blvd., Memphis, TN, and were assessed a fee for using that ATM on or after August 24, 2009 through August 31, 2010, the date Defendant posted a complaint [sic] notice on the ATM (the "Class Period").
>
> All persons who initiated an electronic funds transfer at the Wal-Mart ATM located at 2856 Hickory Hill Ext., Memphis, TN, and were assessed a fee for using that ATM on or after September 22, 2009 through September 23, 2010, the date Defendant posted a complaint [sic] notice on the ATM (the "Class Period").
>
> All persons who initiated an electronic funds transfer at the Wal-Mart ATM located at 175 Beasley Drive, Dickson, TN, and were assessed a fee for using that ATM on or after August 24, 2009 through August 31, 2010, the date Defendant posted a complaint [sic] notice on the ATM (the "Class Period").

(Id. at 7-8 ("the Wal-Mart classes").)

Plaintiffs also propose the following class definitions as to the claims against Defendant Cash Depot:

> All persons who initiated a transaction at the Cash Depot ATM located at the Wal-Mart store at 175 Ji Bell Lane, Savannah, Tennessee, and were assessed a fee for using that ATM on or after August 23, 2009 through September 24, 2010, the date Defendant Cash Depot posted a compliant notice on the ATM.
>
> All persons who initiated a transaction at the Cash Depot ATM located at the Wal-Mart store at 202 Plaza Drive, New Albany, Mississippi, and were assessed a fee for using that ATM on or after March 11, 2010

through September 27, 2010, the date Defendant Cash
Depot posted a compliant notice on the ATM.

All persons who initiated a transaction at the Cash
Depot ATM located at 822 City Avenue, S., Ripley,
Mississippi, and were assessed a fee for using that
ATM on or after September 20, 2009 through September
27, 2010, the date Defendant Cash Depot posted a
compliant notice on the ATM.

(ECF No. 101-2 at 7-8 ("the Cash Depot classes").)

Defendants Wal-Mart and Cash Depot filed respective Responses in

Opposition on April 10, 2013.  (ECF Nos. 113, 114.)  Plaintiffs

filed reply briefs on May 10, 2013.  (ECF Nos. 128, 129.)  The

parties subsequently filed multiple Notices of Supplemental

Authority and response briefs between October 4, 2013, and March

19, 2014.  (ECF Nos. 151-158.)

Also on February 21, 2013, Defendants Wal-Mart and Cash

Depot filed separate Motions for Summary Judgment on the grounds

that Congress eliminated the EFTA fee notice provision upon

which Plaintiffs' claims are based and that Defendants are

shielded by the "safe harbor" and "bona fide error" defenses.

(ECF Nos. 105, 100.) On April 10, 2013, Plaintiffs filed

respective Motions to Strike (ECF Nos. 115, 118), Responses in

Opposition (ECF Nos. 116, 120), and Responses to Defendants'

Statements of Undisputed Facts (ECF Nos. 117, 121). Defendants

filed respective reply briefs on May 10, 2013.  (ECF Nos. 133,

134.)  Also on May 10, 2013, Defendants filed Responses in

Opposition to Plaintiffs' Motions to Strike.  (ECF Nos. 135,

136.)  Plaintiffs replied to Defendants' Responses in Opposition
to Plaintiffs' Motions to Strike on May 24, 2013.  (ECF Nos.
140, 141.)  With leave of Court, Defendants filed respective
sur-replies on June 7, 2013.  (ECF Nos. 145, 146.)

Plaintiffs filed cross-motions for partial summary judgment
on February 21, 2013.  (ECF Nos. 103, 104.)  Defendants Wal-Mart
and Cash Depot filed respective Responses in Opposition on April
10, 2013.  (ECF Nos. 119, 122.)  Plaintiffs filed reply briefs
on May 10, 2013.  (ECF Nos. 131, 132.)

On April 28, 2014, the Court granted Defendants' Motions
for Summary Judgment.  (ECF No. 159.)  Plaintiffs appealed.
(ECF No. 161.)  On May 11, 2015, the Sixth Circuit reversed this
Court's decision, holding that the district court improperly
considered several documents attached to Defendants' Motions for
Summary Judgment.  (ECF No. 162.)

On June 23, 2015, the Court held a Status Conference at
which it granted the parties leave to file supplemental briefing
regarding class certification.  (ECF No. 168.)  Defendants Wal-
Mart and Cash Depot filed separate supplemental Responses in
Opposition to class certification, which consolidated their
earlier filings, on July 17, 2015.  (ECF Nos. 178, 179.)
Plaintiffs filed a Reply on July 31, 2015.  (ECF No. 181.)
Defendants filed a sur-reply on August 19, 2015.  (ECF No. 185.)
On August 25, 2015, the Court held a Status Conference and heard

the parties' arguments regarding class certification.  (ECF No. 186.)

## II.  LEGAL STANDARD

"A district court has broad discretion to decide whether to certify a class."  <u>In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.</u>, 722 F.3d 838, 850 (6th Cir. 2013) (citing <u>In re Am. Med. Sys., Inc.</u>, 75 F.3d 1069, 1079 (6th Cir. 1996)). Before examining Rule 23's requirements, the Court must make two threshold determinations.  First, the Court must ensure that an identifiable "class" exists.  <u>See</u> 7A Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 1760, at 134 (3d ed. 2005).  "[T]he class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class."  <u>Young v. Nationwide Mut. Ins. Co.</u>, 693 F.3d 532, 537-38 (6th Cir. 2012) (internal quotation marks omitted).  "[T]he size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification."  <u>Id.</u> at 539.  Second, the Court must "determine whether the named representative party is a member of the class that party purports to represent."  Wright, et al., <u>supra</u>, § 1761, at 154; <u>see also</u> <u>Faralli v. Hair Today, Gone Tomorrow</u>, No. 1:06 CV 504, 2007 WL 120664, at *4 (N.D. Ohio Jan. 10, 2007).

6

An examination of Rule 23's prerequisites follows the Court's determination of these threshold questions. "To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b). A failure on either front dooms the class." <u>Pilgrim v. Universal Health Card, LLC</u>, 660 F.3d 943, 945-46 (6th Cir. 2011). "The party who is invoking Rule 23 has the burden of showing that all of the prerequisites to utilizing the class-action procedure have been satisfied." Wright, et al., <u>supra</u>, § 1759, at 122; <u>see also Whirlpool</u>, 722 F.3d at 851 ("The plaintiffs carry the burden to prove that the class certification prerequisites are met . . . .").

Under Federal Rule of Civil Procedure 23(a), the Court may certify a class only if:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four requirements – numerosity, commonality, typicality, and adequate representation – serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." Whirlpool, 722 F.3d at 850 (citing Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011)). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 131 S. Ct. at 2551. "[I]f Plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23 . . . ." Wright, et al., supra, § 1759, at 130-31.

In addition to fulfilling Rule 23(a)'s prerequisites, the proposed class must also meet at least one of Rule 23(b)'s requirements. Whirlpool, 722 F.3d at 850. As stated above, supra Part I, pp. 2-3, Plaintiffs seek class certification under Rule 23(b)(3). Rule 23(b)(3) states:

> A class action may be maintained if Rule 23(a) is
> satisfied and if:
>
> . . . .

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"The Supreme Court's recent opinions in [Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184 (2013)] and [Dukes, 131 S. Ct. 2541] now clarify that some inquiry into the merits may be necessary to decide if the Rule 23 prerequisites are met." Whirlpool, 722 F.3d at 851 (citing Amgen, 133 S. Ct. at 1194-95; Dukes, 131 S. Ct. at 2551-52). At the class-certification stage, however, district courts must constrain themselves to consideration of the merits only insofar as it is relevant to the certification decision. "In other words, district courts may not 'turn the class certification proceedings into a dress rehearsal for the trial on the merits.'" Id. at 851-52 (quoting Messner v. Northshore Univ.

HealthSys., 669 F.3d 802, 811 (7th Cir. 2012)).  While the Court assumes the truth of the allegations in the Complaint for purposes of class certification, it must "conduct a rigorous analysis of the petition to ensure that all of the prerequisites are fully met."  Bradberry v. John Hancock Mut. Life Ins. Co., 217 F.R.D. 408, 412 (W.D. Tenn. 2003).

**III. ANALYSIS**

The Court examines each of the above-referenced requirements in turn.

**A.    Threshold Questions**

"There are two 'implied' elements of Civil Rule 23:  an identifiable class must exist and the definition of the class must be unambiguous, and the named representative must be a member of the class."  Faralli, 2007 WL 120664, at *4.

**1.    Existence of a Class**

First, an ascertainable class must exist.  Young, 693 F.3d at 537-38 ("Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." (internal quotation marks omitted)).  "Important elements of defining a class include:  (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and

10

(2) facilitating a court's ability to ascertain its membership in some objective manner." <u>Faralli</u>, 2007 WL 120664, at *5-6 (quoting <u>Chaz Concrete Co., LLC v. Codell</u>, No. 3:03-52-KKC, 2006 WL 2453302, at *5 (E.D. Ky. Aug. 23, 2006)). "A proposed class may be deemed overly broad if it would include members who have not suffered harm at the hands of the [d]efendant and are not at risk to suffer such harm." <u>Chaz Concrete Co.</u>, 2006 WL 2453302, at *6 (quoting <u>McGee v. E. Ohio Gas Co.</u>, 200 F.R.D. 382, 388 (S.D. Ohio 2001)) (internal quotation marks omitted). "That not all members of the class may seek or desire the same relief, or may otherwise have disparate interests, will not render a class definition overly broad . . . ." <u>Gooch v. Life Investors Ins. Co. of Am.</u>, 672 F.3d 402, 429 (6th Cir. 2012) (quoting Herbert Newberg & Alba Conte, <u>Newberg on Class Actions</u>, § 16:24 (4th ed. 2002)) (internal quotation marks omitted); <u>see also</u> <u>Campbell v. Hope Cmty. Credit Union</u>, No. 10-2649-STA, 2012 WL 2395180, at *7 n.43 (W.D. Tenn. June 25, 2012) (same).

When a court must look to the merits of an individual's claims to determine his membership in a class, the class is considered to be a "fail-safe" class. "A fail-safe class is inherently deficient in that it 'precludes membership unless the liability of the defendant is established.'" <u>Schilling v. Kenton Cnty., Ky.</u>, Civil Action No. 10-143-DLB, 2011 WL 293759, at *6 (E.D. Ky. Jan. 27, 2011) (quoting <u>Kamar v. RadioShack</u>

Corp., 375 F. App'x 734, 736 (9th Cir. 2010)).  "Defining class
membership this way is 'palpably unfair to the defendant, and is
also unmanageable' for obvious reasons; not the least of which
includes Defendants' inability to provide class notice pursuant
to Rule 23(c)."  Schilling, 2011 WL 293759, at *6 (quoting
Kamar, 375 F. App'x at 736).

"While the identities of the class members do not need to
be specified for certification, the proposed class must be
sufficiently definite in order to demonstrate that a class
actually exists."  Brashear v. Perry Cnty., Ky., No. 6:06-143-
DCR, 2006 WL 3021135, at *2 (E.D. Ky. Oct. 23, 2006).  "If the
general outlines of the membership of the class are determinable
at the outset of the litigation, a class will be deemed to
exist."  Wright, et al., supra, § 1760, at 136-37 (footnote
omitted); see also Boynton v. Headwaters, Inc., 252 F.R.D. 397,
404 (W.D. Tenn. 2008) (same).

The Court finds Plaintiffs' class definitions sufficiently
definite to determine whether an individual is a class member.
First, Plaintiffs limit the classes in terms of time and in
terms of the specific ATM location.  Because the definitions
limit the classes to individuals who used one of the identified
ATMs during an explicit time frame, the class excludes
individuals who used one of the ATMs before the statutorily-
protected period, those who used one of the ATMs after a

compliant fee notice was posted, and those who used a different ATM. In other words, the proposed definitions exclude those who did not suffer harm at the hands of Defendants.

Second, the particular way in which the putative class members were harmed by Defendants' alleged non-compliance with EFTA is made sufficiently clear by the Complaint and supporting evidence. According to Plaintiffs, each class member was harmed by Defendants' failure to post a notice of an ATM fee on or in proximity to a particular ATM. (First Am. Compl. ¶¶ 105, 106, 111-116.) The putative classes include only those individuals who were, in fact, assessed a fee during the proposed class period.

Additionally, the Court can ascertain the membership of the proposed classes "in some objective manner." Faralli, 2007 WL 120664, at *5-6. Defendants assert that Plaintiffs' proposed class definitions are impermissible in that they create fail-safe classes. The Court disagrees. Plaintiffs' proposed definitions limit the classes by the objective criteria of timing, location, and type of harm. The Court will be able to objectively ascertain who is and is not a member of each class by evaluating who engaged in a transaction and was assessed a fee at one of the specified ATMs during the respective class periods.

Accordingly, the Court finds that the proposed class definitions satisfy the initial threshold requirements.

### 2.   Named Representatives as Members of the Class

Second, "the named representative must be a member of the class." Pilgrim, 2010 WL 1254849, at *1 (quoting Faralli, 2007 WL 120664, at *4) (internal quotation marks omitted), aff'd 660 F.3d 943 (6th Cir. 2011).  This requirement is satisfied as to the named representatives in this case.

First, Plaintiff Janis Donaville alleges that she used the Wal-Mart ATM located at 5255 Elvis Presley Blvd., Memphis, TN, on June 12, 2010, at which time there was no fee notice posted on or in close proximity to the machine.  (See ECF No. 99-2 ¶¶ 17, 20; J. Donaville Decl. ¶¶ 3, 4, ECF No. 99-5; ECF No. 99-8.)  Second, Plaintiff Takari Donaville asserts that he used the Wal-Mart ATM located at 2856 Hickory Hill Ext., Memphis, TN, on June 25, 2010, at which time there was no fee notice posted on or in close proximity to the machine.  (See ECF No. 99-2 ¶¶ 18, 20; T. Donaville Decl. ¶¶ 3, 4, ECF No. 99-7; ECF No. 99-10.) Third, Plaintiff Alan Fambrough claims that, on June 11 2010, he used the Wal-Mart ATM located at 175 Beasley Drive, Dickson, TN, at which time there was no fee notice posted on or in close proximity to the machine.  (See ECF No. 99-2 ¶¶ 19, 20; Fambrough Decl. ¶¶ 3, 4, ECF No. 99-6; ECF No. 99-9.)  Fourth, Plaintiff James Weir claims that he used the Cash Depot ATM

14

located at the Wal-Mart Store at 175 Ji Bell Lane, Savannah, TN, on May 18, 2010, at which time there was no fee notice posted on or in close proximity to the machine. (See ECF No. 101-2 ¶¶ 19, 20; Weir Decl. ¶¶ 3, 4, ECF No. 101-4; ECF No. 101-7; Weir Dep. 16:2-6, ECF No. 179-3.) Fifth, Plaintiff Danelle Black asserts that she used the Cash Depot ATM located at 202 Plaza Drive, New Albany, MS, in June 2010, at which time there was no fee notice posted on or in close proximity to the machine. (See ECF No. 101-2 ¶¶ 17, 20; Black Decl. ¶¶ 3, 4, ECF No. 101-5; ECF No. 101-8.) Finally, Plaintiff Greg Fondren claims that he used the Cash Depot ATM located at the Wal-Mart store at 822 City Avenue South, Ripley, MS, on June 23, 2010, at which time there was no fee notice on or in close proximity to the machine. (See ECF No. 101-2 ¶¶ 18, 20; Fondren Decl. ¶¶ 3, 4, ECF No. 101-6; ECF No. 101-9; Fondren Dep. 12:19-23, ECF No. 179-4.)

Each of the above-referenced Plaintiffs asserts claims indicating that they fall within the proposed class definitions. Accordingly, the Court finds that they are each a member of a proposed class of Plaintiffs in this case. Cf. Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc., 120 F.3d 893, 899 (8th Cir. 1997) (finding that the proposed class lacked a named representative because the lone named representative's claim was time-barred).

**B.   Rule 23(a)'s Requirements**

The Court examines each of Rule 23(a)'s requirements in turn below.

**1.   Numerosity**

First, Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).  Courts do not apply a "strict numerical test for determining impracticability of joinder." Golden v. City of Columbus, 404 F.3d 950, 965 (6th Cir. 2005) (quoting Am. Med. Sys., Inc., 75 F.3d at 1079) (internal quotation marks omitted).  Rather, a numerosity determination "requires examination of the specific facts of each case and imposes no absolute limitations." Id. (quoting Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980)).  "When class size reaches substantial proportions, . . . the impracticability requirement is usually satisfied by the numbers alone." Am. Med. Sys., Inc., 75 F.3d at 1079.

"[S]ubstantial numbers of affected consumers are sufficient to satisfy this requirement." Whirlpool, 722 F.3d at 852 (citing Daffin v. Ford Motor Co., 458 F.3d 549, 552 (6th Cir. 2006)) (internal quotation marks omitted).  Moreover, "[a]lthough a party seeking class certification need not show the exact number of potential members in order to satisfy this prerequisite, the party does bear the burden of showing

16

impracticability and mere speculation as to the number of
parties involved is not sufficient . . . ."  Wright, et al.,
supra, § 1762, at 177-84 (footnotes omitted).

Courts within the Sixth Circuit have recently stated that
"the numerosity requirement is fulfilled when the number of
class members exceeds forty."  Phillips v. Philip Morris Cos.
Inc., 298 F.R.D. 355, 362 (N.D. Ohio 2014) (citing Stewart v.
Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)).  Generally, the
numerosity requirement is satisfied when "general knowledge and
common sense indicate that the class is large."  Id. (citing
Olden v. LaFarge Corp., 203 F.R.D. 254, 269 (E.D. Mich. 2001),
aff'd, 383 F.3d 495 (6th Cir. 2004); see also Isabel v. Velsicol
Chem. Corp., No. 04-2297 DV, 2006 WL 1745053, at *4 (W.D. Tenn.
June 20, 2006) (same).

In the instant case, the numerosity requirement is
satisfied.  Plaintiffs allege that, based on Defendant Wal-
Mart's discovery responses (see ECF No. 99-3 at 11), "there were
over 24,000 transactions at the ATM used by Ms. Janis Donaville
during the class period and that it collected over $36,000.00 in
fees."  (ECF No. 99-2 at 10.)  Plaintiffs also allege that
"there were over 9,400 transactions at the ATM used by Takari
Donaville during the class period" and "over 6,900 transactions
at the ATM used by Alan Fambrough during the class period."
(Id. at 10-11.)  Similarly, based on Cash Depot's discovery

responses (see ECF No. 101-3 at 11), Plaintiffs allege that
"there were over 5,700 transactions at the ATM used by Ms.
Danelle Black during the class period," "over 1,800 transactions
at the ATM used by Greg Fondren during the class period," and
"over 4,800 transactions at the ATM used by James Weir during
the class period." (ECF No. 101-2 at 10.) Even after
eliminating some portion of transactions that did not involve an
improper ATM fee, these are sufficiently large classes to render
litigation by joinder impracticable.

Accordingly, Plaintiffs have carried their burden of
demonstrating that the proposed class is sufficiently numerous
to warrant certification.

### 2. Commonality

Second, Rule 23(a)(2) requires that there be "questions of
law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

> To demonstrate commonality, plaintiffs must show
> that class members have suffered the same injury.
> "Their claims must depend upon a common
> contention . . . of such a nature that it is capable
> of classwide resolution – which means that
> determination of its truth or falsity will resolve an
> issue that is central to the validity of each one of
> the claims in one stroke."

Whirlpool, 722 F.3d at 852 (alteration in original) (citation
omitted) (quoting Dukes, 131 S. Ct. at 2551); see also Powell v.
Tosh, 280 F.R.D. 296, 305 (W.D. Ky. 2012) (same).

"What matters to class certification . . . is not the
raising of common 'questions' – even in droves – but, rather the
capacity of a classwide proceeding to generate common <u>answers</u>
apt to drive the resolution of the litigation."  <u>Dukes</u>,
131 S. Ct. at 2551 (emphasis in original) (quoting Richard A.
Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>,
84 N.Y.U. L. Rev. 97, 132 (2009)).  As stated by the Sixth
Circuit, "there need only be one question common to the class,"
but the resolution of that question must "advance the
litigation."  <u>Sprague v. Gen. Motors Corp.</u>, 133 F.3d 388, 397
(6th Cir. 1998) (en banc).

Although the Rule 23(a)(2) commonality inquiry is less
rigorous than the Rule 23(b)(3) predominance inquiry insofar as
even a single common question suffices, <u>see</u> <u>Dukes</u>, 131 S. Ct. at
2556-57, the Court must examine the dissimilarities within the
class to determine whether there is even a single common
question.[1]  <u>See</u> 7A Charles Alan Wright, et al., <u>Federal Practice
and Procedure</u> § 1763, at 51 (3d ed. Supp. 2015) (noting that the
practice of interpreting Rule 23(a)(2)'s commonality question

---

[1] In <u>Dukes</u>, Justice Ginsburg concurred in part and dissented in part with the
majority, stating that the majority's analysis "blends Rule 23(a)(2)'s
threshold criterion with the more demanding criteria of Rule 23(b)(3), and
thereby elevates the (a)(2) inquiry so that it is no longer 'easily
satisfied.'"  131 S. Ct. at 2565 (Ginsburg, J., concurring in part and
dissenting in part) (citation omitted).  According to Justice Ginsburg, "[i]f
courts must conduct a 'dissimilarities' analysis at the Rule 23(a)(2) stage,
no mission remains for Rule 23(b)(3)."  <u>Id.</u> at 2566.

permissively has been called into question by the Supreme

Court's decision in Dukes).

In this case, Plaintiffs assert that the common issues as

to Defendant Wal-Mart include, but are not limited to, the

following:

> a. Whether Defendant was at all relevant times
> during the class period an automated teller machine
> operator which imposed a fee on consumers for using
> the Wal-Mart ATM;
>
> b. Whether Defendant is the operator of the
> Wal-Mart ATMs;
>
> c. Whether Defendant complied, at all times
> during the class period, with the notice requirements
> of 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16;
>
> d. Whether Defendant had a notice of the fee
> charged to consumers posted in a prominent and
> conspicuous location at the Wal-Mart ATMs;
>
> e. Whether Plaintiffs and members of the Class
> are entitled to statutory damages, costs and
> attorney's fees for Defendant's acts and conduct; and
>
> f. Whether Defendant has any applicable
> statutory defenses.

(ECF No. 99-2 at 11.)

Plaintiffs likewise assert that the common issues as to

Defendant Cash Depot include, but are not limited to, the

following:

> a. Whether Defendant was at all relevant times
> during the class period an automated teller machine
> operator which imposed a fee on consumers for using
> the Cash Depot ATM;

b.  Whether Defendant is the operator of the Cash Depot ATMs;

c.  Whether Defendant complied, at all times during the class period, with the notice requirements of 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16;

d.  Whether Defendant had a notice of the fee charged to consumers posted in a prominent and conspicuous location at the Cash Depot ATMs;

e.  Whether Plaintiffs and members of the Class are entitled to statutory damages, costs and attorney's fees for Defendant's acts and conduct; and

f.  Whether Defendant has any applicable statutory defenses.

(ECF No. 101-2 at 11.)

Plaintiffs cite the Court's decision in Campbell v. Hope Cmty. Credit Union, 2012 WL 2395180, at *4 (W.D. Tenn. June 25, 2012) (S. Thomas Anderson, Judge). (See ECF No. 99-2 at 11; ECF No. 101-2 at 11.) In Campbell, the putative class asserted a claim based on EFTA non-compliance, which involved the same six common issues as the instant case. See Campbell, 2012 WL 2395180, at *4. Although the defendant in Campbell did not challenge commonality, Judge Anderson found that these six issues were "clearly 'at the heart' of [the] case, and that resolution of these common issues of fact and law will be necessary to advance the suit." Campbell, 2012 WL 2395180, at *4.

Rule 23(a)(2)'s commonality requirement is likewise met as to the class in the instant case. Although there will

necessarily be more narrow inquiries into the specific time
frame of Defendants' alleged violations, "the mere fact that
questions peculiar to each individual member of the class remain
after the common questions of the defendant's liability have
been resolved does not dictate the conclusion that a class
action is impermissible."  Wilkof v. Caraco Pharm. Labs., Ltd.,
280 F.R.D. 332, 338 (E.D. Mich. 2012) (quoting Sterling v.
Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988))
(internal quotation marks omitted).

Plaintiffs have asserted sufficiently common questions of
law--e.g., whether Defendant's vandalism defense bars this
claim--and fact--e.g., whether Defendant had a compliant fee
notice posted at all times during the class period--to surmount
Rule 23(a)(2)'s modest hurdle.

### 3.   Typicality

Third, Rule 23(a)(3) requires that "the claims or defenses
of the representative parties [be] typical of the claims or
defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The
typicality requirement is met "if the class members' claims are
'fairly encompassed by the named plaintiffs' claims.'  This
requirement insures that the representatives' interests are
aligned with the interests of the represented class members so
that, by pursuing their own interests, the class representatives
also advocate the interests of the class members."  Whirlpool,

722 F.3d at 852-53 (citation omitted) (quoting Sprague, 133 F.3d

at 399); see also 7A Charles Alan Wright, et al., Federal

Practice and Procedure § 1764, at 264 (3d ed. 2005)

("Rule 23(a)(3) assures that the claims of the named plaintiffs

are similar enough to the claims of the class so that the

representative will adequately represent them.").  This Court

has stated that a named plaintiff's claim is typical of the

claims of the putative class "if it arises from the same event,

practice, or course of conduct that gives rise to the claims of

other class members, and if his or her claims are based on the

same legal theory."  Boynton, 252 F.R.D. at 406 (citing Am. Med.

Sys., Inc., 75 F.3d at 1082.  If the named plaintiff and the

putative class members have claims based on the same legal

theory, "typicality is not defeated, even if the claims are not

identical."  Wilkof, 280 F.R.D. at 339.

In this case, Plaintiffs assert that "there are no material

differences between Plaintiffs' claims and those of the proposed

class."  (ECF No. 99-2 at 12; ECF No. 101-2 at 12.)  Plaintiffs

argue that the named representatives' claims are typical of the

claims of the class because each member of the Wal-Mart classes

was charged an identical ATM fee of $1.50 and each member of the

Cash Depot classes was charged an identical ATM fee of $1.75.

(ECF No. 99-2 at 12; ECF No. 101-2 at 12.)

Plaintiffs' argument is persuasive. The Court finds the claims of the named representatives typical of the putative class's claims. The named representatives of the Wal-Mart classes all engaged in transactions at an allegedly noncompliant Wal-Mart ATM and were charged an ATM fee of $1.50 and the named representatives of the Cash Depot classes engaged in transactions at an allegedly noncompliant Cash Depot ATM and were charged an ATM fee of $1.75. Accordingly, Plaintiffs' claims and the claims of the putative class are based on the same operative facts. Moreover, Plaintiffs' claims and the claims of the putative class will center on the same theory of EFTA non-compliance. Therefore, Plaintiffs have satisfied Rule 23(a)(3)'s typicality requirement. Cf. Bradberry, 217 F.R.D. at 413 (finding the named representative's claim typical of the putative class's claims because he purchased the same allegedly worthless insurance policy and alleged the same legal theories of fraud and breach of contract); Boynton, 252 F.R.D. at 405-06 (finding the named representative's claim typical of the putative class's claims because he alleged the same course of fraudulent conduct); Wilkof, 280 F.R.D. at 341 (finding the named representatives' claims typical of the putative class's claims because they alleged injury stemming from the defendant's false representations).

####        4.        Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative

parties . . . fairly and adequately protect the interests of the

class." Fed. R. Civ. P. 23(a)(4).  In Boynton, this Court

explained the adequacy-of-representation requirement as follows:

> The United States Court of Appeals for the Sixth
> Circuit has delineated "two criteria for determining
> whether the representation of the class will be
> adequate:  1) The representative must have common
> interests with unnamed members of the class, and 2) it
> must appear that the representatives will vigorously
> prosecute the interests of the class through qualified
> counsel." [Senter v. Gen. Motors Corp., 532 F.2d 511,
> 524-25 (6th Cir. 1976) (citations omitted)].  The
> adequate representation requirement overlaps with the
> typicality requirement because in the absence of
> typical claims, the class representative has no
> incentives to pursue the claims of the other class
> members. Am. Med. Sys., 75 F.3d at 1083.

Boynton, 252 F.R.D. at 406; see also Phillips, 298 F.R.D. at 363

(same).  "[T]he court should consider whether the class members

have interests that are antagonistic to one another." Wilkof,

280 F.R.D. at 342 (citing Stout v. J.D. Byrider, 228 F.3d 709,

717 (6th Cir. 2000)).

The named Plaintiffs assert that they "have a stake in the

outcome of the lawsuit and their interests are in line with

those of the proposed class." (ECF No. 99-2 at 13; ECF No. 101-

2 at 13.)  The named Plaintiffs further assert that their

"claims are typical of class members', and there is no basis for

them to be considered antagonistic with those of class members.

(ECF No. 99-2 at 13; ECF No. 101-2 at 13)  Plaintiffs also argue

that their counsel are well-qualified and have extensive

experience litigating class-action cases, including EFTA cases.[2]

(ECF No. 99-2 at 13; ECF No. 101-2 at 13.)

In Campbell, Judge Anderson found that the named

representative would adequately represent the unnamed class

members because, "[l]ike members of the class, Plaintiff

conducted a transaction at the Madison Avenue ATM and was

allegedly charged an improper fee for the transaction."  2012 WL

2395180, at *7.  Moreover, "[l]ike members of the class,

Plaintiff has an interest in establishing the violations of the

EFTA and obtaining recovery for statutory damages against

Defendant."  Id.  The instant case is indistinguishable from

Campbell in that regard.  The named Plaintiffs, like the unnamed

members of the class, used one of the ATMs at issue and have an

interest in recovering statutory damages stemming from

Defendant's alleged noncompliance with the EFTA.  Accordingly,

the named Plaintiffs have the requisite common interests with

---

[2] The qualifications of Plaintiffs' counsel are attached as exhibits to the
instant Motions.  Attached to both Motions is the declaration of Eric G.
Calhoun, Esq. and biographical information.  (Ex. I, ECF No. 99-11; Ex. H;
ECF No. 101-10.)  Also attached is the declaration of B.J. Wade, Esq.
(Ex. J, ECF No. 99-12; Ex. I, ECF No. 101-11.)  Mr. Calhoun's declaration
(see ECF No. 99-11 ¶¶ 3-9; ECF No. 101-10 ¶¶ 3-9) and Mr. Wade's declaration
(see ECF No. 99-12 ¶ 4; ECF No. 101-11 ¶ 4) list the numerous class-action
matters in which the above-mentioned counsel have participated.  Plaintiffs
also note that Judge Anderson of this Court found counsel "well-qualified" to
serve as class counsel in EFTA cases in Campbell, 2012 WL 2395180, at *7.
(ECF No. 99-2 at 13; ECF No. 101-2 at 13.)

the unnamed members of the class.  See Boynton, 252 F.R.D. at
406.

Furthermore, the Court is convinced that the named
Plaintiffs will vigorously prosecute this case through qualified
counsel.  As this case is more than three years old and has
involved multiple hearings before the Court and a successful
appeal, there is no question that Plaintiffs are committed to
the resolution of this case.  Additionally, the Court has no
misgivings regarding counsel's ability to adequately represent
the class.  Plaintiffs' counsel has diligently litigated this
case since its inception and has significant experience handling
class-action matters.  Cf. Phillips, 298 F.R.D. at 364 ("Counsel
has considerable experience with this type of representation and
has demonstrated a willingness to diligently pursue the claims
of the putative class members.").

Accordingly, the Court finds that the named Plaintiffs will
adequately represent the putative class members, consistent with
Rule 23(a)(4).

**C.    Rule 23(b)(3)'s Requirements**

In order to satisfy Rule 23(b)(3), the Court must find that
"the questions of law or fact common to class members
predominate over any questions affecting only individual
members, and that a class action is superior to other available
methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3).  In other words, "the

proposed class must be 'sufficiently cohesive to warrant

adjudication by representation.'"  <u>In re Scrap Metal Antitrust</u>

<u>Litig.</u>, 527 F.3d 517, 535 (6th Cir. 2008) (quoting <u>Amchem</u>

<u>Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623 (1997)).

### 1.  Predominance

According to the Sixth Circuit,

> the predominance inquiry must focus on common
> questions that can be proved through evidence common
> to the class.  A plaintiff class need not prove that
> each element of a claim can be established by
> classwide proof:  "What the rule does require is that
> common questions '<u>predominate</u> over any questions
> affecting only individual [class] members.'"

<u>Whirlpool</u>, 722 F.3d at 858 (alteration in original) (citation

omitted) (quoting <u>Amgen</u>, 133 S. Ct. at 1196); <u>see also</u> <u>Boynton</u>,

252 F.R.D. at 405 (same).  "The predominance requirement is far

more exacting than the Rule 23(a) analysis, and requires a

showing that common issues predominate over individual ones."

<u>Phillips</u>, 298 F.R.D. at 364 (citing <u>Amchem</u>, 521 U.S. at 624).

"[W]hen adjudication of questions of liability common to

the class will achieve economies of time and expense, the

predominance standard is generally satisfied even if damages are

not provable in the aggregate."  <u>Comcast Corp. v. Behrend</u>,

133 S. Ct. 1426, 1437 (2013).  "Recognition that individual

damages calculations do not preclude class certification under

Rule 23(b)(3) is well nigh universal."  <u>Id.</u>  "On the other hand,

if the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." 7AA Charles Alan Wright, et al., Federal Practice and Procedure § 1778, at 134 (3d ed. 2005).

In the instant case, Plaintiffs assert that the common issue of whether Defendants' liability for noncompliance with the EFTA on-machine fee notice requirement predominates over individualized issues. (See ECF No. 99-2 at 14-15; ECF No. 101-2 at 14-15.) Furthermore, Plaintiffs assert that "statutory damages will be assessed based upon generalized proof" in this case. (ECF No. 99-2 at 14; ECF No. 101-2 at 14.) Plaintiffs assert that, in fact, "[t]here are no individual issues that bode against certification of the class." (ECF No. 99-2 at 15; ECF No. 101-2 at 14.) The Court finds Plaintiffs' argument persuasive.

The common inquiries necessary to determine Defendants' liability predominate over any individual determinations in the instant matter. The common questions previously identified include: (1) whether Defendants complied, at all times during the class periods, with the EFTA notice requirements at the six ATM locations at issue, (2) whether Defendants had a notice of the fee charged to consumers posted in a prominent and conspicuous location at the ATMs, (3) whether Plaintiffs and

members of the classes are entitled to statutory damages, costs, and attorney's fees for Defendants' acts and conduct, and (4) whether Defendants have any applicable statutory defenses, see supra Part III.B.2.  The primary issue in the instant case is whether Defendants violated EFTA.  This issue predominates over all individualized inquiries in this case.  See Campbell, 2012 WL 2395180, at *9 (finding that the common issue of whether defendant violated EFTA predominated under similar facts).

Defendants argue that the Court would need to individually determine whether each user was accessing a consumer or business account.  This concern, however, "is more theoretical than real" because it is unlikely that the ATMs at issue were frequently used for withdrawals of cash from business accounts.  See Hughes v. Kore of Ind. Enter., Inc., 731 F.3d 672, 677 (7th Cir. 2012) (finding that "it is unlikely that ATMs in bars are commonly used for business transactions").  Business transactions more commonly involve credit cards, rather than cash for accounting purposes.  Moreover, this issue is secondary to the common question of whether Defendants complied with EFTA for the proposed class periods.

Additionally, Defendants contend that individualized proof will be necessary to determine whether the required notice was posted at the time of each particular transaction.  Defendants are incorrect in this regard.  Common proof will, in fact,

resolve the question of when the ATM fee notice ceased to be posted on or in close proximity to each ATM at issue.  In Frey, a case involving similar allegations of EFTA violations, the Fifth Circuit affirmed the district court's holding that "the period in which the sign was absent is a common issue of fact, and whether the notice was absent on any particular day is not an individualized inquiry defeating predominance."  Frey v. First Nat'l Bank Sw., 602 F. App'x 164, 171 (5th Cir. 2015) (per curiam) (citing Frey, No. 3:11-CV-3093, slip op. at 13-14 (N.D. Tex.)).  The Fifth Circuit recognized that, although "[t]he proof that is ultimately produced may or may not ultimately entitle all class members to relief, . . . the proof required is still common to the class."  Frey, 602 F. App'x at 171; see also Gawarecki v. ATM Network, Inc., No. 11-cv-1923 (SRN/JJG), 2014 WL 2600056, at *15 (D. Minn. June 10, 2014) ("[T]he determination of the time period in which Defendant was, or was not, in compliance with the EFTA notice provision applies to the entire class and so will be made by common evidence."); Christy v. Heritage Bank, No. 3:10-cv-0874, 2013 WL 6858008, at *7 (M.D. Tenn. Nov. 8, 2013) (finding that the named plaintiff "will have to prove the period of time during which the on-machine fee notice was missing, but each proposed class member will not have to do the same").

The Court will not need to perform separate inquiries into each individual transaction, but rather will be able to determine the time frame of Defendants' alleged non-compliance based on common proof.  See Kinder v. Nw. Bank, 278 F.R.D. 176, 185 (W.D. Mich. 2011) ("Whether Defendant did nor did not provide the notice of a fee is the central factual question relevant to all members of the class.  That factual question can be determined by generalized proof.").  Plaintiffs will not necessarily need to present affirmative proof that the fee notice was absent for each individual transaction.  Assuming Plaintiffs can demonstrate that the fee notice was absent for a specific period of time, the finder of fact may be able to infer that the notice was absent for a particular transaction.  See Frey, 602 F. App'x at 171 ("Any evidentiary inferences to be drawn from the proof regarding the dates the notice was absent will need to be resolved by the trier of fact.").

This inquiry also does not involve individualized damages calculations.  See Comcast Corp., 133 S. Ct. at 1437.  Assuming Defendants did not provide the required notice, each class member will have the same claim for statutory damages.  See Campbell, 2012 WL 2395180, at *9.  Moreover, the "claims will not vary based on which ATM they used, largely because they all contend that Defendant[s] failed to give proper notice and then assessed a fee in violation of EFTA."  Id.  Consequently, the

Court finds that Plaintiffs' proposed classes satisfy the predominance requirement of Rule 23(b)(3).

### 2. Superiority

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Class-action litigation is superior in cases where "a group composed of consumers . . . will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure." Wright, et al., supra, § 1779, at 161. "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." Young, 693 F.3d at 545 (alteration omitted) (quoting Powers v. Hamilton Cnty. Pub. Defender Comm'n, 501 F.3d 592, 619 (6th Cir. 2007)). Rule 23 delineates the following four matters pertinent to the superiority finding:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The Court examines each of these items in turn below.

### a.   The Class Members' Interest in Individually Controlling the Prosecution

Plaintiffs assert that "no class member has greater or lesser interest than Plaintiffs in controlling the litigation." (ECF No. 99-2 at 16; ECF No. 101-2 at 15.)  Plaintiffs assert that because "each potential plaintiff's statutory damages will range from a hundred dollars to a thousand dollars, it is fairly certain that individual plaintiffs would lack the resources to pursue their claims."  (ECF No. 99-2 at 16; ECF No. 101-2 at 15.)  The Court agrees.

"Class action may be preferred over individual litigation where individual suits would result in small recoveries, which 'do not provide the incentive for any individual to bring a solo action for prosecuting his or her rights.'"  Kinder, 278 F.R.D. at 185 (quoting Amchem Prods., Inc., 521 U.S. 591, 617 (1997)). In the instant matter, individual suits would yield very small recoveries and do not incentivize individuals to bring their claims.  Additionally, the interests of the class members are identical; each seeks to be remedied for the harm incurred by Defendants' alleged EFTA violations.  There is no evidence that class members have an interest in individually controlling the litigation.

### b. The Extent and Nature of Any Litigation Concerning the Controversy Already Begun by the Class Members

Plaintiffs assert that "Defendant[s] [have] not identified, and Plaintiffs are not aware of, any other pending class action litigation against Defendant[s] by any other customer making the allegations set forth in the Complaint concerning these particular ATMs." (ECF No. 99-2 at 16; ECF No. 101-2 at 16.) "Most members of the class are likely not aware of the technical violation of the statute." Kinder, 278 F.R.D. at 186. This factor therefore weighs in favor of the superiority of class treatment of the instant case.

### c. The Desirability or Undesirability of Concentrating the Litigation of the Claims in the Particular Forum

Plaintiffs assert that the class action should be concentrated in the Western District of Tennessee "to conserve the resources of the Court and the parties." (ECF No. 99-2 at 16; ECF No. 101-2 at 16.) As previously discussed, the instant matter primarily involves the common issue of whether Defendants violated EFTA's notice requirement and improperly assessed ATM fees, see supra Part III.C.1. It would be inefficient to require the thousands of individuals affected by Defendants' alleged conduct to bring individual actions. See Campbell, 2012 WL 2395180, at *9 (finding that "hundreds or thousands of individual actions" would be "a vastly inferior method of

35

adjudication" (citing <u>Daffin v. Ford Motor Co.</u>, 458 F.3d 549,
554 (6th Cir. 2006)).  Concentrating the litigation in a single
forum would significantly conserve the resources of the Court.
Class treatment, therefore, is the superior method of
adjudicating this case.

### d.    The Likely Difficulties in Managing the Class Action

Finally, Plaintiffs assert that this case does not present
manageability difficulties.  (ECF No. 99-2 at 16-17; ECF No.
101-2 at 16-17.)  Specifically, Plaintiffs argue that "[w]hether
pursued individually or as a class, the predominating, perhaps
only, question will be whether Defendant[s] violated EFTA . . .
."  (ECF No. 99-2 at 17; ECF No. 101-2 at 16 (quoting <u>Burns v.
First Am. Bank</u>, No. 04 C 7682, 2006 WL 3754820, at *12 (N.D.
Ill. Dec. 19, 2006)).)  Having already determined that common
issues predominate over individual issues, the Court agrees.
The instant case will involve common proof as to whether
Defendants violated EFTA, whether Plaintiffs are entitled to
damages, and whether Defendants can assert any applicable
defenses.  As a result, this case is particularly well-suited
for class adjudication.  Additionally, this case does not
present the same manageability issues involved in EFTA cases
with millions of potential class members.  <u>See, e.g.</u>, <u>Mowry v.</u>

JP Morgan Chase Bank, N.A., No. 06 C 4312, 2007 WL 1772142, at *6 (N.D. Ill. June 19, 2007).

Weighing these factors together, the Court finds that common issues of law and fact predominate in this case, and class treatment is the superior procedural approach.

**IV.    CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Class Certification (ECF No. 99) and Plaintiffs' Motion for Class Certification (ECF No. 101) are GRANTED.

**IT IS SO ORDERED,** this 3rd day of November, 2015.


/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE